CITY OF PORTLAND

*vs.*

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Cumberland.    Opinion December 6, 1907.

*Telephone Companies.   Conduits.   Fixtures.   Annexation.   Taxation.   Excise Tax.*
*Private & Special Laws, 1885, chapter 513 ; 1891, chapter 204, section 1.*
*Revised Statutes, chapter 8, sections 35, 36, 37, 38, 39, 40, 41.*

In the case at bar, the city of Portland sought to recover a tax assessed by the city upon the conduits of the defendant company, as real estate, in addition to an excise tax assessed upon the defendant by the State.   The conduits in question were laid in the streets of Portland under the authority of section 1, chapter 204 of the Private and Special Laws of 1891, by virtue of license therefor, granted by the municipal officers according to regulations established by them.   Under these regulations the location of the conduits, wherever made, was subject to revocation and change at the order of the municipal officers.   The quality of permanency in the annexation did not exist and the conduits were not laid for the benefit of the freehold.   It is also provided by Revised Statutes, chapter 8, section 41, that the excise tax assessed upon the company "shall be in lieu of all taxes upon  .  .  .   its property used in the conduct of its telephone or telegraph business, including the poles, wires, insulators," etc.   But the statute contains no specification of the conduits of the company among the items of personal property thus exempted.   The method of conveying telephone wires by subterranean conduits instead of poles, had not been adopted, however, at the time of the passage of the original act of 1883 providing for the taxation of telephone companies.

*Held :*   (1)   That the intention with which an article is annexed to the freehold has come to be recognized as a cardinal rule and most important criterion by which to determine its character as a fixture ; that the attendant facts and circumstances are chiefly valuable as evidence of such intention ;   and that this controlling intention is not the secret intention with which the article is affixed, but the intention which the law deduces from all the circumstances of the annexation.

(2)   That there was nothing in the nature of conduits, the mode and purpose of annexation or the relation of the parties to each other to warrant the inference that the defendant company intended to relinquish its owner-

ship in these pipes or that the owners of the soil expected to acquire title to them by annexation, and that being laid under a license revocable at the will of the municipal officers so far as any particular highway or location was concerned they did not become a constituent part of the freehold.

(3)   That it was the purpose of the legislature to impose upon the telephone companies an excise tax for the privilege of doing business in this State and to exempt all personal property used in its business, leaving only its real estate, such as land and buildings for local taxation ; and that the question whether the expression of one thing in the statute is to operate as the exclusion of the other is one of intention to be gathered from an examination of all parts of the statute by the aid of the usual rules of interpretation.

(4)   That under the circumstances of this case, the conduits of the defendant company in the streets of Portland being in fact a part of the property used by the company in the conduct of its business, are properly held to be embraced in the term "property" referred to in Revised Statutes, chapter 8, section 41, that they are not excluded by the express mention of other items of exempted property in the same section and that they are not subject to taxation by the city of Portland as real estate.

On agreed statement.    Judgment for defendant.

Action of debt brought in the Superior Court, Cumberland County, to recover the sum of $1484 for taxes assessed by the plaintiff city against the defendant company, a corporation, for the year 1906.    Said tax was assessed on the conduits of the defendant company in the plaintiff city, as *real estate*, and was in addition to the excise tax assessed upon the defendant company by the State Assessors under the provisions of Revised Statutes, chapter 8, sections 35, 36, 37, 38, 39, 40 and 41.

The cause came on for hearing at the April term, 1907, of said Superior Court, at which time an agreed statement of facts was filed and the case was sent to the Law Court with the following stipulations :    "Upon the foregoing statement of facts the court is to render such judgment as the rights of the parties require, and if the court decides that said conduits were real estate and were taxable as such by said plaintiff city, judgment is to be rendered for the plaintiff city for the sum of fourteen hundred and eighty four dollars, with interest from the date of the writ.    If said conduits were not real estate and were not taxable as such by said plaintiff city, judgment shall be rendered for defendant corporation."

The only question presented to the Law Court was whether or not the conduits of the defendant company were legally taxable as real estate by the plaintiff city.

All the material facts are stated in the opinion.

*Michael T. O'Brien,* City Solicitor, for plaintiff.

*Payson & Virgin,* for defendant.

SITTING : EMERY, C. J., WHITEHOUSE, STROUT, PEABODY, SPEAR, KING, JJ.

WHITEHOUSE, J.   This is an action of debt to recover the sum of $1484.00 for taxes assessed by the plaintiff city against the defendant corporation, for the year 1906.   The case comes to this court upon agreed statement of facts.   It is admitted that the defendant is a legally organized corporation authorized by the Private and Special Laws of 1885, chapter 513, to do business in this State, and that during the year 1906, it was carrying on a telephone business in the plaintiff city and throughout the State.   The tax in question was assessed upon the conduits of the company, as real estate, and was in addition to an excise tax assessed by the State Assessors upon the defendant corporation by virtue of sections 35 to 41, inclusive, of chapter 8 of Revised Statutes.

The conduits in question were iron and earthenware tubes or pipes laid under the surface of the streets with branch pipes running to poles set along the sides of the streets and the buildings on the streets, through which wires were run for the purpose of connecting the telephones in the central office of the defendant corporation, with telephones in the buildings of their subscribers and patrons.

These conduits were laid in the streets of Portland under the authority of section one of chapter 204 of the Private and Special Laws of 1891, and by virtue of licenses therefor granted to the defendant corporation by the municipal officers of the City of Portland, under rules and regulations established by them.   Section one of chapter 204 of the Private and Special Laws of 1891, reads as follows :

"The New England Telephone and Telegraph Company may have the right to place its wires and cables under the surface of streets in the cities of Portland and Lewiston, with the permission and under the supervision of the municipal officers and subject to such rules and regulations as they may from time to time impose, and for that purpose may, when authorized by the board of mayor and aldermen of said cities, construct and maintain its cables, wires, conduits and manholes in any public way or street designated in such grant of authority."

Section 1 of the rules and regulations established by the municipal officers of Portland, provides, that these conduits shall be constructed and maintained "in accordance with the regulations hereinafter provided, and subject to existing ordinances and such rules and regulations in addition to, or in amendment thereof, as may hereafter be passed."

It is further provided by section nine of these regulations that the defendant company "shall remove its conduits to other suitable locations whenever ordered to do so by the board of mayor and aldermen," and by article 5 of section 10, that the company "will at once comply with any changes in its conduits, manholes or poles that the board of mayor and aldermen may after hearing duly appointed, order."     And section 11, is as follows:

"Any authority granted by said board of mayor and aldermen may, after notice and hearing, be revoked or altered at any time without liability on the part of the city therefor; but in case any location in any street shall be revoked, a substitute location in some other street, that will in the opinion of the said board accommodate the service, shall be granted."

Sections 36 and 41, chapter 8 of the Revised Statutes, prescribe the method of taxing telephone companies in this State, as follows: "Every corporation, association or person operating in whole or in part a telephone or telegraph line within the state for tolls or other compensation, shall pay to the treasurer of state for the use of the state an annual excise tax for the privilege of conducting such business within the state, which tax, with the tax provided for in section forty-one, is in place of all taxes upon the property of such corpo-

ration, association or person employed in such business, and of all taxes upon the shares of the capital stock of any such corporation."

"The excise tax collected under the six preceding sections shall be in lieu of all taxes upon any corporation therein designated, upon its shares of capital stock and its property used in the conduct of its telephone or telegraph business, including the poles, wires, insulators, office furniture, batteries, instruments, telegraphic and telephonic apparatus, telephones and transmitters used under lease or license or owned by such corporation, association or person; provided, however, that the real estate and also personal property not hereinabove exempted, owned by such corporation, association or person, shall be taxed in the municipality in which the same is situated; but the amount of the tax assessed upon such real estate if owned and actually used by such corporation, association or person in the transaction of their business, shall be deducted by the board of state assessors from the tax laid hereunder. The assessment of taxes on such real estate shall be legal, whether assessed as resident or non-resident property."

Thus it appears that the only question to be determined by the court is whether the conduits of the defendant corporation were legally taxed as real estate by the City of Portland. The defendant contends that these conduits are not real estate and cannot therefore be legally taxed as such by the city.

The intention with which an article is annexed to the freehold has come to be recognized as the cardinal rule and most important criterion by which to determine its character as a fixture, and the attendant facts and circumstances are chiefly valuable as evidence of such intention. "This controlling intention is not the initial intention at the time of procuring the article in question, nor the secret intention with which it is affixed, but the intention which the law deduces from all the circumstances of the annexation. . . . If the annexation is not intended to be permanent, the chattel will not be deemed a fixture." Cyc. of Law & Proc. Vol. 19, pages 1046, 1047, and cases cited. In accordance with this view was the decision of this court in *Telephone Co.* v. *Cyr*, 95 Maine, 287, and the principles enunciated in that case are invoked by the defendant

company as decisive of the case at bar. The question involved in that case was whether the telephone line of the company, consisting of poles, wires and insulators was personal property as between debtor and creditor at the time of its seizure and sale on execution, and it was held by the court in that case that from such external facts as the nature of the structure and mode of attachment, the purpose and use for which the annexation was made and the relation and situation of the party making it, no intention to make a permanent annexation could be legally deduced and that the poles, wires and insulators there in question, continued to retain their character as chattels which might be seized and sold as personal property. In the opinion, the court say: "The only privilege granted in any particular spot, parcel, or portion of land is temporary and not permanent, a mere license revocable at the will of the municipal officers so far as any particular portion of the highway or any particular highway is concerned, and not a permanent vested interest in the land itself."

"In determining the intention a most important consideration is the relation of the party making the annexation to the property in question. 1 Wash. Real. Prop. 5 Ed. page 22.

"Tried by this test, no intention can be inferred to make the posts, wires and insulators in this case a permanent accession to the freehold. The owner of the chattels was not the owner of the soil. It had no right to the continued enjoyment of its use, simply a revocable license, a temporary privilege which might be determined at any time by the municipal officers. There is nothing from which it can be inferred that it intended to deprive itself of its property. It is the temporary character of the privilege, obtained under the Act of 1885, which distinguishes it from the rights and interests of railroad and other quasi public corporations in lands taken under the right of eminent domain, or in public roads and highways, the use of which has been directly granted to them by the legislature without any such limitations as are imposed by that act. Under such circumstances, the rights and interests acquired are not subject to be determined at the will of third parties and are permanent and vested."

These considerations respecting the intention of the owner in erecting a line of telephone poles, are equally applicable to the conduits in the case at bar, which were employed as a more convenient and improved method of accomplishing the same purpose. It has been seen that by virtue of the rules and regulations of the municipal officers under which these iron and earthenware tubes were laid under the surface of the streets of Portland, the city reserved full right and authority to revoke or change the location of them whenever it might be deemed necessary or proper, and the defendant company would be compelled to remove such conduits "whenever ordered to do so by the board of mayor and aldermen." Wherever the location might be made, it was subject to revocation and change at the order of the municipal officers. The quality of permanency in the annexation did not exist. The conduits were obviously not designed to make the land more useful. They were not laid for the benefit of the freehold. There is nothing in the nature of the pipes, the mode and purpose of annexation or the relation of the parties to each other, to warrant the inference that the defendant company intended to relinquish its ownership of the pipes, or that the owner of the soil expected to acquire title to them by such annexation. They did not become a constituent part of the freehold. There is manifestly no distinction in principle between the line of poles under consideration in the Cyr case and the subterranean conduits in the case at bar.

It is true that in *Paris* v. *Norway Water Company*, 85 Maine, 330, it was held by this court that the water pipes, hydrants and conduits of a water company laid through the streets of a city or town, are taxed as real estate by the company in possession of them in the city or town where they are laid, but as pointed out in *Telephone Company* v. *Cyr*, supra, there is a marked distinction between the character of the location in case of these water pipes and the location of the conduits in the case at bar. The charter of the Water Company in that case, found in chapter 369 of Laws of 1885, expressly authorized the company to lay down and maintain its water pipes in the streets and they were not removable at the order of the municipal officers. In the opinion in that case, the

court say : "In using the street or road they place their pipes or rails in, or upon, the ground, there permanently to remain. They occupy land with appliances which become valuable for the revenue they yield. These appliances are fixed, permanent, used in connection with the soil that supports and sustains them. When considered as the property of their respective companies, they are not land within the common law rule. But when considered as if owned by the same person, who has title to the soil, they may properly enough be so considered."

But in the Cyr case, it has been seen it was held by the court that the interest of the party placing the conduits under the surface of the streets was "a mere license revocable at the will of the municipal officers so far as any particular portion of the highway or any particular highway, is concerned, and not a permanent vested interest in the land itself."

In some analogous cases in other States, conclusions have been reached in harmony with these views. In *Telephone Co.* v. *Terminal Co.*, 182 Mass. 397, upon a petition filed for the assessment of land damages by reason of the discontinuance of certain streets, the status of the plaintiff's conduits and wires was brought in question and the court said : "All the statutes and ordinances upon which the petitioners rely as a justification for their action in constructing conduits in the public streets and as giving them rights of property there, are merely provisions for the regulation of the different public rights in the streets. None of them purports to convey private rights of property. Most of them expressly state the limitations upon the authority given, and make the petitioners subject to possible future proceedings terminating or modifying their rights.

"But where there is no such express provision the result is the same. Their rights in connection with the rights of others of the public are subject to reasonable regulation, or even to termination at any time, if the supreme authority acting in the public interest shall so determine. It follows that they have no rights of property in the street, and their structures that were built therein were personal property which they had a right to remove, and which could not be subjects for the assessment of damages under statutes of this

kind." See also *Lorain Steel Co. v. Railway Co.*, 187 Mass. 500. So also in *Newport Illuminating Co.* v. *Assessors*, 19 R. I. 632, where poles of the plaintiff company were erected in the streets by permission of the city council, and the city reserved the right to remove them at any time; it was held that the corporation had acquired no vested right in the streets but that the poles and wires were simply articles of personal property, although in all probability, they would be allowed to remain substantially as they were for an indefinite period.

The fact has not been overlooked that in *Telephone Co. v. Cyr*, supra, the poles and wires there under consideration, were held to retain their character as personal property as between debtor and creditor, and that other and different considerations might in some instances be involved in determining whether they would retain their character as chattels for the purpose of taxation. In ordinary cases, however, in the absence of any statutory provisions to the contrary, property which is personal between debtor and creditor is presumptively personal for the purpose of taxation. Furthermore in the case at bar, it has been seen that section 41 of chapter 8 of the Revised Statutes above quoted, expressly includes poles and wires among the items of personal property exempted from taxation.

But the counsel for the plaintiff appears to attach much significance to the fact that conduits are not expressly mentioned in the specification of exempted items of the defendant's personal property in the statute last named; and with respect to some statutes such an omission might be deemed of noteworthy importance in ascertaining the intention of the legislature. In this case, however, it is a matter of common knowledge that at the time of the passage of the original act in 1883, providing for the taxation of telephone companies, this method of conveying wires by means of underground pipes instead of poles, had not been adopted by telephone companies, and the word conduits was therefore not suggested to the legislative mind and was not specified in the act. But the excise tax there provided for is declared to be "in lieu of all taxes upon any corporation therein designated, upon its shares of capital stock and its property used in the conduct of its telephone

or telegraph business;" and in view of the clear and unambiguous terms of this clause considered in connection with all other parts of the act, it seems to have been the manifest purpose of the legislature to impose upon telephone companies an excise tax for the privilege of doing business in this State, and to exempt all personal property used in its business, leaving only its real estate, such as land and buildings for local taxation. Whether the expression of one thing is to operate as the exclusion of another, is ordinarily a question of intention, to be gathered from an examination of all parts of a statute by the aid of the usual rules of interpretation; and under the circumstances of this case, the maxim "expressio unius est exclusio alterius" has but slight application and affords but little aid. In section 216 of Endlich on the Interpretation of Statutes, the author says: "As, however, mere particular expressions will not be allowed entirely to exclude a more general intent clearly manifested by a statute, so the effect of particular provisions upon more general ones overlapping them must also be a question of legislative intention. This intention is often best served by permitting the subject matter of the particular provision to stand side by side with that of the general provision."

Section 112, relating to the extension of an act to new conditions, contains the following in regard to things ejusdem generis, viz: "The language of a statute is generally extended to new things which were not known and could not have been contemplated by the legislature when it was passed. This occurs, when the act deals with a genus, and the thing which afterwards comes into existence is a species of it."

It is accordingly the opinion of the court that the conduits of the defendant company in the streets of Portland, being in fact a part of the property used by the company in the conduct of its business, are properly held to be embraced in the term "property" referred to in section 41 of chapter 8, Revised Statutes; that they are not excluded by the express mention of other items of exempted property in the same section, and that they are not subject to taxation by the City of Portland as real estate. The entry must therefore be,

*Judgment for the defendant.*