STEARNS LIGHTING & POWER CO. et al. v. CENTRAL TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1915. On Petition for Rehearing, June 30, 1915.)

No. 2618.

1. VENDOR AND PURCHASER ☜231—NOTICE TO PURCHASERS—MORTGAGES—RECORDING—"CONVEYANCE"—"FIXTURE."

How. Ann. St. Mich. 1912, § 10856, provides that the term "conveyance," as used in that chapter which relates to deeds and mortgages, the recording thereof, etc., shall embrace every instrument in writing by which any estate or interest in real estate is created, mortgaged, or assigned, etc. An electric light company, which gave a mortgage on all proper-

ty owned by it including real estate, leasehold interests, power plants, etc., and all property which it might thereafter acquire, then owned a power plant and generating machinery situated upon real estate held by it under a lease for 25 years, and it thereafter constructed an electric transmission line, which was annexed to and physically connected with such power plant. *Held*, that the record of the mortgage, when duly recorded as a mortgage of real estate, was constructive notice to subsequent purchasers, as the leasehold interest was governed by the laws regulating the recording of conveyances of real estate, while the transmission line contained all of the elements and attributes of a "fixture" or appurtenance to real estate.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. ☞231.

For other definitions, see Words and Phrases, First and Second Series, Conveyance; Fixture.]

2. MORTGAGES ☞274—RECORDING—NOTICE.

The transmission line having been appurtenant to an interest in real estate when the mortgage attached and when notice thereof was given by its recording, the effect thereof upon the rights already fixed under it was not defeated by the fact that, when the transmission line was sold to a purchaser against which it was sought to enforce a mortgage, the power and generating plant was unoperated and inoperative, and was not included in the sale, nor by the fact that the lease had been declared forfeited by the nonpayment of rent.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 718–724, 728; Dec. Dig. ☞274.]

On Petition for Rehearing.

3. CORPORATIONS ☞479—BONDS—RIGHTS OF PURCHASERS.

A purchaser at a receiver's sale of the property of an electric light and power company, which had issued bonds secured by a mortgage on all of its property, contracted to convey the property to the S. Co. free from all liens and incumbrances. He then owned a number of the mortgage bonds, but prior to such contract M. had acquired an equitable right to the bonds as collateral security for a debt, and after the transaction with the S. Co., and after it had acquired and paid for the property, he delivered the bonds to M. *Held*, that the mortgage was enforceable for M.'s benefit, since, though the contract to convey free from incumbrances gave the S. Co. an equitable title to the bonds as against its vendor, M. not only acquired the legal right to the bonds, but had an equity superior to that of the S. Co., and the fact that some of the bonds were past due was immaterial, as M.'s equity did not depend upon their negotiability.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. ☞479.]

Appeals from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit by the Central Trust Company and another against the Stearns Lighting & Power Company, William L. Hammond, trustee, and others. From a decree for complainants, the defendants named appeal. Affirmed.

The appellants were two of the defendants below; the appellees were complainants. We adopt the statement of facts made by the District Judge, as follows:

"Except as hereinafter noted, the material and essential facts of this case have been stipulated and those which are necessary to the determination of the legal questions involved may be stated as follows: Each of the defendants, Interurban Electric Light & Power Company (hereinafter called the

Interurban Company) and Stearns Lighting & Power Company (hereinafter called the Stearns Company) was incorporated under the laws of the state of Michigan to carry on the business of conveying electricity for supplying electric light and power. On the 1st day of June, 1909, the Interurban Company, for the purpose, among other things, of raising money to carry on, extend, improve, and develop its business, and for the purchase of the property involved in this controversy, authorized the issue of 'first mortgage 6 per cent. gold bonds' aggregating $25,000 and bearing interest at the rate of 6 per cent. per annum, payable semiannually. On the same day, and in order to secure the payment of the bonds, the Interurban Company executed and delivered to complainants, as trustees, a mortgage or deed of trust covering all property of every kind and nature which it then owned, including its real estate, leasehold interests, power plants, buildings, machinery, right of way, easements, franchises, contracts for supplying electricity, revenues, accounts, demands, etc., and also 'all of the property, real, personal, and mixed, of all kinds whatsoever,  * * *  which the company may hereafter acquire, or to which it·may hereafter become entitled, and which may be appurtenant to the business now or.hereafter conducted by the said company.' On June 2, 1909, this mortgage was filed for record and recorded in the office of the register of deeds of Mason county, and on January 20, 1910, in the office of the register of deeds of Oceana county. No other or separate copy of the mortgage was filed in either of these offices and no affidavit showing the good faith of the parties and the adequacy of the consideration was attached to the mortgage so filed for record.

"After the making of the mortgage and before December 1, 1909, the bonds secured by it were issued by the Interurban Company. These bonds were dated June 1, 1909, and were numbered consecutively from 1 to 50, both inclusive, and were duly certified by the Western Trust & Savings Bank as trustee. Each of the bonds was payable to bearer and was in the sum of $500. Five bonds matured on June 1st of each year, beginning June 1, 1910. Interest coupons were attached. After the making of the mortgage, the Interurban Company, largely from the proceeds of the sale of the bonds, purchased and erected a line of poles and towers, upon which were strung and attached lines of copper wires, together with the cross-arms and insulators suitable for a complete electrical transmission line, extending from the power station of the company at Hamlin Dam over and along a right of way procured by the company in and along the public highways to and through the city of Ludington, in Mason county; thence southerly in Oceana county to and through the village of Pentwater; and thence south to within about three miles of the village of Hart. Poles were set nearly to the village of Hart. On December 31, 1909, Harry V. Huston was, by the order of the Circuit Court of Mason county, in chancery, appointed receiver of the Interurban Company and qualified and took possession of its assets. On August 25, 1910, pursuant to the order of the court, the receiver sold all the right, title, and interest of the receiver in the assets and property of said company to one W. F. Mayhon for $3,500. By order of the court, the property was sold subject to the lien of complainants' mortgage, and also subject to the lien of receiver's certificates which had been issued to the amount of $5,500. On January 3, 1911, the receiver executed a deed to Mayhon. In this deed the property was described as in complainants' mortgage, and was conveyed subject to the lien of complainants' mortgage and the receiver's certificates.

"On May 12, 1911, W. F. Mayhon entered into a contract to sell and convey to the defendant Stearns Company the property in controversy in this suit. The description of the property to be so sold and conveyed, the consideration to be paid therefor, and the covenants of the parties were set forth in the contract as follows: 'Now, therefore, in consideration of the sum of one dollar to him in hand paid by the Stearns Lighting & Power Company, the receipt whereof is hereby confessed and acknowledged, and of other available considerations, the said party of the first part, W. F. Mayhon, hereby agrees to sell to the said party of the second part, the Stearns Lighting & Power Company, the entire lighting and power·plant at Pentwater, Mich., including all real estate, franchises, and contracts, the line of poles, towers, wires,

cross-arms, and insulators extending from the Hamlin Dam, through Ludington and Pentwater, to the village of Hart, Mich., all rights of way and franchises granted by all cities, villages, and townships or municipalities through which the said line extends or is proposed to extend, granted to said W. F. Mayhon, or to the Interurban Electric Light & Power Company, all tools of every description, wherever located, forming any part of the assets of the Interurban Electric Light & Power Company, including three step-up transformers located at Hamlin, and thirteen bundles of wire, twenty barrels of insulators, and all cross-arms estimated to be sufficient to complete the line to the village of Hart, and specifically including all of the property of the Interurban Electric Light & Power Company, except the water wheels, generators, and switchboard at the power house at Hamlin Dam, the buildings at Hamlin Dam, the rights in said dam, and five acres of land adjacent thereto, for the consideration and price following, that is to say: Sixteen thousand dollars in Stearns Lighting & Power Company first mortgage 6 per cent. bonds, dated and maturing as follows: Ten thousand dollars of said bonds to be dated July 1, 1911, and to mature July 1, 1916; six thousand dollars of said bonds to be dated July 1, 1911, and to mature July 1, 1917; interest on said bonds to be payable according to the coupons attached thereto. It is understood and agreed that the above bonds are not to be delivered to said Mayhon until the date specified for their issue. It is further specifically agreed and provided that upon the delivery to the said W. F. Mayhon of the bonds as above specified at the First National Bank in Ludington, Mich., said Mayhon will execute and deliver to said Stearns Lighting & Power Company at said bank good and sufficient conveyances of both the real estate and personal property, and due assignments of all contracts, franchises, etc., free of and from all liens and incumbrances; and said W. F. Mayhon hereby, in consideration of the purchase price aforesaid, agrees to warrant and defend the title to the property above contracted to be conveyed against all liens and incumbrances, and agrees to defray the expenses of all litigation arising concerning any contest of the title to said property.'

"On June 27, 1911, to secure the issue of $100,000 of 'first mortgage 6 per cent. refunding gold bonds,' the Stearns Company executed and delivered to the First National Bank of Ludington, Mich., as trustee, a deed of trust covering all of its property, including 'the transmission line of the Interurban Electric Lighting & Power Company, extending from Hamlin Dam, in Mason county, Mich., to Pentwater, and thence toward Hart, Oceana county, Mich.' A corrected draft or redraft of this deed of trust was executed by the Stearns Company to the First National Bank of Ludington, Mich., dated July 1, 1911, and was filed in the office of the city clerk of Ludington on August 29, 1911, and was recorded in the office of the register of deeds of Mason county on October 18, 1911. Thereafter the First National Bank of Ludington resigned as trustee, and upon the nomination of certain holders of the bonds secured by the trust deed the defendant William L. Hammond was appointed successor trustee.

"After the execution of the contract of sale dated May 12, 1911, the Stearns Company entered upon the rights of way and premises where the electrical transmission line of the Interurban Company was located and tore down and removed and dismantled certain portions thereof. The line running south from Ludington was removed from the Lake or Valley road (so called), which runs within a short distance from the shore of Lake Michigan, farther east to the state road (so called). The line was so changed between Ludington on the north and a point on the south, which is a short distance north and west of Pentwater. The line from Pentwater to Hart was completed with poles and wires taken from the line above Ludington. The line of towers, poles, and wires (except a few poles) between Hamlin Dam and Ludington was torn down and dismantled. These poles, towers, and wires were largely used to erect a new line of poles and wires for the Stearns Company, running east from Ludington to Scottville and Butters. The steel towers which conveyed the wires through the city of Ludington were taken down and removed to the south part of Ludington and used upon the line of the Stearns Company running easterly from its plant. On November 14, 1911, W. F. Mayhon and his wife executed and delivered to complainants a quitclaim deed of all

the property of the Interurban Company which he had purchased from the receiver of that company. In that deed the property conveyed is described substantially as in complainant's mortgage.

"At the hearing, complainants produced and introduced in evidence the 50 bonds, with interest coupons attached, payment of which was secured by their mortgage or trust deed. Oral testimony was given by several witnesses, and documentary evidence was introduced bearing upon the questions of the good faith of the Stearns Company, the value of the property purchased by it from Mayhon, and the knowledge or information of its officers as to complainants' mortgage.

"Complainants ask: (1) That their mortgage be decreed to be a valid first lien upon all the property described therein, and also upon all the property of the Stearns Company, with which it has been so intermingled as to be incapable of identification; (2) that they be given a personal decree against all of the defendants, except William L. Hammond, for the amount found to be due upon their mortgage; and (3) that their mortgage be foreclosed in the usual manner. Defendants deny that complainants are entitled to any relief."

The District Court held that the trustee's mortgage title was good against the Stearns Company, that the mortgaged property taken and mingled with its own by the Stearns Company was worth $16,000, and directed the enforcement of the mortgage lien against all the commingled property unless the Stearns Company should redeem by paying this amount. The Stearns Company and its mortgage trustee, Hammond, appealed.

Charles McPherson, of Grand Rapids, Mich., for appellants.

P. B. Eckhart, of Chicago, Ill., and W. F. Keeney, of Grand Rapids, Mich., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

PER CURIAM. [1] The power plant and generating machinery of the Interurban Company, to which the transmission line in question was annexed and with which it was physically connected, was situated upon real estate held by that company under lease for 25 years from January 1, 1909. The mortgage expressly covered this leasehold interest. Under the settled law of Michigan the Interurban Company's interest in the real estate (being held under lease for 3 years and upwards) is governed by the laws regulating the recording of conveyances of real estate. Howell's Mich. Stat. (2d Ed.) § 10856; Crouse v. Michell, 130 Mich. 347, 357, 90 N. W. 32, 97 Am. St. Rep. 479. The mortgage was duly recorded as a mortgage on real estate, and the record was constructive notice to subsequent purchasers of the existence and contents of the mortgage. Godfroy v. Disbrow, Walker's Ch. (Mich.) 260. With this premise, we adopt the opinion of the District Court upon the main controversy in the case, as follows:

"The first and most important question to be determined relates to the character of the property purchased and acquired by the Stearns Company from W. F. Mayhon. Was the electrical transmission line, belonging to the Interurban Company and covered by complainants' mortgage, real estate or personal property? If it was real estate, the other questions which have been elaborately presented and discussed become of little or no importance, because it is conceded that complainants' mortgage was duly executed and recorded as a real estate mortgage, and, as to all subsequent creditors, purchasers, or incumbrancers, became and continued to be a valid first lien upon all the real estate then owned or afterwards acquired by the Interurban Company. Recognizing the controlling importance of this question, counsel upon both sides, with commendable zeal and industry, have collected and re-

viewed a great many cases bearing upon the various phases of the subject. A careful and painstaking examination of the authorities cited leads to the conclusion that an electrical transmission line, constructed, connected, and situated as was this one, must be classed as real estate and not as personal property. It was a necessary and integral part of the electric plant. It was physically connected with and annexed to the power plant and generating machinery, which it must be conceded were real estate. Without the transmission line the entire property would have been valueless for the purposes for which it was constructed and created. Its construction and annexation were intended to be permanent. It could not be severed from the rest of the plant or machine without not only impairing but destroying the whole. It thus contained and combined in itself all of the elements and attributes of a fixture or appurtenance to real estate. A few of the many cases so holding are the following: Dreisbach v. Ross, 195 Pa. 278 [45 Atl. 722]; Hughes v. Lambertville Electric Light Co., 53 N. J. Eq. 435 [32 Atl. 69]; Fecht v. Drake, 2 Ariz. 239 [12 Pac. 694]; Badger Lumber Co. v. Marion Co., 48 Kan. 182 [29 Pac. 476, 15 L. R. A. 652, 30 Am. St. Rep. 301]; Keating Implement Co. v. Marshall Elec. Light Co., 74 Tex. 605 [12 S. W. 489]; Southern Elec. Supply Co. v. Rolla Elec. Light Co., 75 Mo. App. 622; Metropolitan Trust Co. v. Dolgeville Elec. Light Co. [35 Misc. Rep. 467], 71 N. Y. Supp. 1055; Tippett & Wood v. Barham, 180 Fed. 76 [103 C. C. A. 430, 37 L. R. A. (N. S.) 119]; Appeal of Des Moines Water Co., 48 Iowa, 324.

"It is doubtless true that some of the courts have seemingly announced a different doctrine. A review of these decisions would be of no benefit to any one. It is sufficient to say that, upon careful examination, it will be found that such cases can usually, if not always, be distinguished from the present one. In some instances the language of the court is mere dictum; in others it must be considered solely in its application to special statutes which create and contain in themselves artificial and arbitrary distinctions and definitions not found or permissible elsewhere; and in still others it is employed to negative the contention that electric light poles and wires and similar property are a part of the real estate upon which they are situated. Readfield Tel. & Tel. Co. v. Cyr, 95 Me. 287 [49 Atl. 1047]; Dunsmiur v. Electric Light Co., 24 Wash. 104 [63 Pac. 1095]; Railway Co. v. Western Union Co., 118 Fed. 497 [55 C. C. A. 263]; Shelbyville Water Co. v. Illinois, 140 Ill. 545 [30 N. E. 678, 16 L. R. A. 505]; Union Loan & Trust Co. v. Motor Road Co. (C. C.) 51 Fed. 840; People v. Feitrier [99 App. Div. 274] 90 N. Y. Supp. 904; People v. Hendrickson, 109 N. Y. S. 402; Portland v. Telephone Co., 103 Me. 240 [68 Atl. 1040].

"Having reached the conclusion that the electrical transmission line covered by complainants' mortgage and afterwards conveyed to the Stearns Company was real estate, an extended discussion of the other questions presented would be profitless, and they may be disposed of very briefly."

[2] The transmission line having been appurtenant to an interest in real estate when the Interurban Company's mortgage attached thereto and when notice thereof was given by its recording, the effect thereof upon the rights already fixed under it was not defeated by the fact that when Mayhon sold to the Stearns Company the power and generating plant was unoperated and inoperative, and was not included in that sale, nor by the fact that the lease had been declared forfeited for nonpayment of rent, inferably after Mayhon's purchase.

The proposition that McMullin was not a good faith purchaser of the bonds in question is not sustained by the record. At the time of the conveyance by Mayhon to the Stearns Company the former was the owner of $17,500 of the bonds secured by the trust mortgage in suit, and his warranty that the property was free from incumbrance doubtless operated to give the Stearns Company an equitable title to these bonds as against Mayhon. The bonds, however, were negotiable.

Mayhon retained their physical custody, and later, in violation of his agreement with the Stearns Company, transferred them to McMullin, who took them without notice of the Stearns claim and in good faith paid Mayhon therefor. The trustee is clearly entitled to enforce them for McMullin's benefit.

We have considered the remaining criticisms upon the decree, and think them without merit.

The decree appealed from is in our opinion correct, and is affirmed, with costs.

## On Petition for Rehearing.

[3] In our opinion filed June 8th instant, in discussing appellant's contention that McMullin was not a good faith purchaser of the $17,-500 of the bonds in question, after stating that at the time of Mayhon's conveyance to the Stearns Company the former was the owner of these bonds, and his warranty that the property was free from incumbrance doubtless operated to give the Stearns Company an equitable title to the bonds as against Mayhon, we said:

"The bonds, however, were negotiable. Mayhon retained their physical custody, and later, in violation of his agreement with the Stearns Company, transferred them to McMullin, who took them without notice of the Stearns claim and in good faith paid Mayhon therefor."

It is urged that the bonds in question were delivered by Mayhon to McMullin after the Stearns Company had acquired and paid for the transmission line, and only as collateral security for debts created previous to the time the Stearns Company acquired its rights, and that "since the Stearns Company became the equitable owner of the bonds" McMullin has parted with nothing of value, nor "surrendered or postponed any rights which he possessed to obtain possession of the bonds." The record shows that, prior to Mayhon's contract with the Stearns Company, McMullin had acquired an equitable right to the bonds as collateral security for a debt resulting from a prior canceled contract for the purchase by McMullin from Mayhon of the Interurban Company's properties; that after Mayhon's transaction with the Stearns Company the former delivered physical possession of the bonds to McMullin. The situation thus is that, as opposed to McMullin's legal right to the bonds, the Stearns Company has only an equity, and that this equity is later than and subordinate to McMullin's equity. The fact that some of the bonds were past due is immaterial, as McMullin's equity does not depend upon their negotiability. While, therefore, the statement in our opinion regarding Mayhon's payment for the bonds is not strictly accurate, the result reached was correct.

The petition for rehearing is denied.