This is an original application in this court for a writ of mandamus directed to the department of public service and the members thereof.
The relator, the Spokane United Railways, is a corporation organized under the laws of this state, and for many years, pursuant to a franchise granted by the city of Spokane, it had owned and operated, by electric power, a street railway system for the carriage of persons and property. July 7, 1937, the original franchise ordinance was amended, which granted to the United Railways the right to operate and maintain a street railway system, and
". . . also to own, maintain and operate trolley busses and a trolley bus system, and motor busses, and motor bus system, or any or all, operated by electricity, gasoline or other motor fuel, in the City of Spokane."
Pursuant to the extension given in this ordinance of the right to operate motor busses propelled by gasoline or other motor fuel, and a previous ordinance, the United Railways had substituted motor busses for the carriage of persons and property in the place of the street cars. The United Railways thereupon filed with the department of public service a schedule of rates for carrying passengers on the system, and the city of Spokane filed a protest against this schedule. The department, acting on the opinion of the attorney general, dismissed the application on the ground that the department did not have jurisdiction over the operation of the motor busses. The present proceeding was then instituted to require the department to assume jurisdiction of the matter of the adjustment of the fares and *Page 597 
to determine the reasonableness and adequacy of the rates applied for.
It thus appears that the question presented is one of jurisdiction of the department of public service, and the answer to this question must be found in chapter 117 of the Laws of 1911, p. 538 (Chapter 1, Title 72, Rem. Rev. Stat., § 10339 [P.C. § 5528] et seq.). That chapter contains an act of the legislature relating to public service properties and utilities within the state and providing for the regulation of the same. It is a comprehensive act, and in § 8, p. 541, thereof (Rem. Rev. Stat., § 10344 [P.C. § 5535]), there are a large number of persons and things defined. It defines a "street railroad" and a "street railroad company," and "express company," a "common carrier," the term "transportation of property," the term "transportation of persons," the term "service," and the term "public service company." The term "common carrier" therein is defined as follows:
"The term `common carrier', when used in this act, includes all railroads, railroad companies, street railroads, street railroad companies, steamboat companies, express companies, car companies, sleeping car companies, freight companies, freight line companies, and every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town, owning, operating, managing or controlling any such agency for public use in the conveyance of persons or property for hire within this state."
It will be observed that there is no mention within this definition of motor busses for the carriage of persons or property.
The question then is reduced to whether, motor busses not having been specially mentioned and other things being mentioned, the motor busses are excluded *Page 598 
from the operation of the statute. That the operation of motor busses is a business affected with a public interest, no one will question, and, under § 13 of Art. 12 of the constitution of this state, is "subject to legislative control." The act, as suggested, is a long and comprehensive one, and it was the evident purpose of the legislature to confer upon the then public service commission, now the department of public service, authority which would include "within its reach all public service corporations." State ex rel. Webster v. Superior Court,67 Wn. 37, 120 P. 861, Ann. Cas. 1913D, 78, L.R.A. 1915C, 287.
[1] From the fact that, in defining common carriers, the statute mentioned street railroads and street railway companies, but did not mention motor busses, it does not necessarily follow that it was the legislative intent that motor busses should not come under the operation of the law. The rule that the expression of one thing will, under certain circumstances, exclude others, should be applied as a means of discovering the legislative intent, and its application should not be permitted to defeat the plainly indicated purpose of the legislature. 59 C.J. 984;Portland v. New England Tel. Tel. Co., 103 Me. 240,68 A. 1040; Wisconsin Tel. Co. v. Oshkosh, 62 Wis. 32, 21 N.W. 828.
In determining the legislative intent, the purpose for which a law was enacted is a matter of prime importance in arriving at a correct interpretation of its parts, and
"`A thing which is within the object, spirit and the meaning of the statute is as much within the statute as if it were within the letter.'" 2 Lewis' Sutherland Statutory Construction (2d ed.), §§ 369 and 379.
When the extent and scope of the statute are considered, it becomes perfectly plain that it was the intention of the legislature, as above pointed out, to include *Page 599 
within its reach all public service corporations, except where there was a special exemption, as is the case of utilities owned by a municipal corporation, as pointed out in § 105 of the act.
The motor busses, as already stated, are performing exactly the same service as the street railway previously performed. The difference lies in that of the motive power or method of propulsion, and the further fact that motor busses run on rubber tires and street cars upon steel rails. But these differences are not of controlling importance. There is nothing in the statute defining common carriers which says anything about the motive power. To what extent, if at all, motor busses were in use when the act of 1911 was passed, about which the parties disagree, is likewise not of controlling importance.
Cases from other jurisdictions are of very little assistance in determining the matter now before us, because of the difference in the statutory provisions of the different states upon which the cases are based.
The relator, the Spokane United Railways, had a right to have its application considered upon its merits by the respondent, the department of public service.
Let the writ issue.
STEINERT, C.J., BEALS, MILLARD, and ROBINSON, JJ., concur. *Page 600