[No. 46795. En Banc. October 9, 1980.]

THE STATE OF WASHINGTON, *Petitioner,* v. RONALD J. WILLIAMS, *Respondent.*

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD F. CALIGURI, *Petitioner.*

*Dean C. Smith, Special Prosecuting Attorney,* for State.

*Kempton, Savage & Gossard,* by *Anthony Savage,* for Williams.

*Kenneth E. Kanev,* for Caliguri.

UTTER, C.J.—These consolidated cases concern the validity of pretrial suppression orders entered in the separate proceedings brought against two alleged coconspirators. In each case, the trial court suppressed a portion of the evidence, and both the State and defendant sought discretionary review pursuant to RAP 2.3. Division Two of the Court of Appeals granted discretionary review, consolidated the cases for purposes of appellate review, and certified the cases to this court.

The parties raise four separate issues which must be resolved in order to determine the validity of the suppression orders: (1) the applicability of the Washington privacy act to evidence gathered by federal agents which is to be used in a state criminal proceeding; (2) whether a police officer or civilian informant who participates in a recorded conversation can testify about the content of the intercepted conversation even though the recording is suppressed; (3) whether a defendant has standing to object to admission in his trial of recordings of the private conversations of a codefendant; and (4) the admissibility of recorded conversations containing threats of extortion, blackmail, bodily harm, or other unlawful requests or demands. We hold our state privacy act applies to interceptions and recordings by federal agents and that tape recordings obtained in violation of our act are inadmissible in state court proceedings. That act also prohibits testimony about those recorded conversations, when the recording itself is suppressed. Under our state privacy act, a defendant has standing to object to use of evidence obtained in violation of the statute, even though the defendant was not a participant in the unlawfully intercepted or recorded conversation. Recordings and police participant testimony concerning any parts of conversations relating to threats of extortion, blackmail, bodily harm, or unlawful requests or demands of a similar nature were properly ruled admissible in the Williams case. The suppression order in the Williams case is affirmed and the order in the Caliguri case is affirmed in part and reversed in part.

During 1977 and 1978, the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms conducted an investigation of alleged racketeering activities in Pierce County. In the course of the investigation, federal agents obtained evidence of criminal activity by Robert Valentine who agreed to cooperate in the investigation as part of a plea bargain arrangement. Valentine assisted the federal agents in using wire recorders and transmission

devices to record conversations he had with defendant Ronald Williams.

Valentine further assisted the federal agents by introducing undercover agent Norman Transeth to defendant Williams. Transeth also engaged in conversations with Williams which were tape recorded by the federal agents. Agent Transeth in turn introduced Williams to undercover agent Paul Russell. In telephone conversations between Williams and Russell, which were recorded by the federal agents, Williams allegedly arranged for a contact between Russell and defendant Richard Caliguri. Subsequently, Russell met with Caliguri, and their conversations were recorded by the federal agents. All of the interceptions and recordings of both defendants' conversations took place without the knowledge or consent of the defendants. The interceptions and recordings were conducted pursuant to the federal wiretap statute, Title III, Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520.

The tape recordings of all the conversations were used in federal criminal proceedings against both Williams and Caliguri on racketeering charges, and both defendants were convicted and sentenced. The State of Washington then brought criminal charges against both defendants. Williams was charged with aggravated attempted murder, attempted murder, first degree arson, conspiracy to commit murder, and conspiracy to commit first degree arson. Caliguri was charged with conspiracy to commit first degree murder and conspiracy to commit first degree arson. In both cases the State seeks to introduce the tape recordings as well as testimony by the federal agents and civilian informant Valentine concerning the circumstances and content of all the recorded conversations. In a pretrial motion, Williams and Caliguri each moved for the suppression of the recordings and the testimony of the participants in the conversations.

The trial court in the Williams case ordered the suppression of the recordings and the testimony concerning the conversations in which Williams participated and the conversations in which codefendant Caliguri participated. The

court ruled admissible, however, those parts of the conversations which related to threats of extortion, blackmail, bodily harm, or other unlawful requests or demands.

In the Caliguri case, the trial court suppressed only the tape recordings of the conversations in which Caliguri participated. The court ruled admissible agent Russell's testimony concerning the content of those conversations, and also ruled admissible the recordings of and testimony concerning conversations with codefendant Williams.

## I
### APPLICABILITY OF STATE PRIVACY ACT

The challenged tape recordings were all made with the knowledge and consent of only one party to the conversation, and without prior judicial approval. The interception and recording were conducted in accordance with the federal wiretap statute which provides that:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c). However, the interception and recording did not comply with the provisions of the Washington privacy act, RCW 9.73, which requires prior judicial approval in order to intercept or record a private telephone communication or a private conversation with the consent of only one of the parties to the conversation. RCW 9.73-.030. Thus, if the state privacy act is applicable, the recordings must be suppressed. RCW 9.73.050. The State argues that the privacy act is not applicable because: (a) the language of the statute implicitly excludes federal agents from its statutory provisions; and (b) the federal wiretap law preempts the more rigorous requirements of the state privacy act.

### A

The state privacy act applies to interceptions and

recordings conducted by: "any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions . . ." RCW 9.73.030(1). The State argues that because the statute specifically mentions "the state of Washington, its agencies, and political subdivisions" and does not similarly list the federal government and its agencies and political subdivisions, it must be inferred that the legislature intended to exclude federal agents from the coverage of the statute. The State relies upon the principle of "expressio unius est exclusio alterius", which declares that when a statute specifically designates the things or classes of things upon which it operates, it can be inferred that the legislature intended to exclude any omitted matters. *See, e.g., Washington Natural Gas Co. v. Public Util. Dist. 1,* 77 Wn.2d 94, 98, 459 P.2d 633 (1969).

██ This principle, however, is not applicable in the present case because federal agents are, in fact, included within one of the general classes listed in the statute. The privacy act provides that it is applicable to "any individual." RCW 9.73.030(1). Interpreting this phrase, as we must, in accordance with its ordinary meaning (*see In re Lehman,* 93 Wn.2d 25, 27, 604 P.2d 948 (1980)), we conclude the legislature intended the statute to apply to all individuals, including federal agents.

Moreover, as we have repeatedly cautioned, the maxim of express mention and implicit exclusion "'is to be used only as a means of ascertaining the legislative intent where it is doubtful, and not as a means of defeating the apparent intent of the legislature.'" *DeGrief v. Seattle,* 50 Wn.2d 1, 12, 297 P.2d 940 (1956); *State ex rel. Becker v. Wiley,* 16 Wn.2d 340, 350–51, 133 P.2d 507 (1943); *State ex rel. Spokane United Rys. v. Department of Pub. Serv.,* 191 Wash. 595, 598, 71 P.2d 661 (1937). The legislature's employment of the term "any individual" evinces an intention to render the statutory requirements broadly applicable to all individuals who might conceivably record a conversation. The

maxim of express mention and implicit exclusion cannot be rigidly applied to exclude federal agents and thereby defeat the intent of the legislature.

B

The State next argues that the federal wiretap statute preempts the Washington privacy act, and therefore precludes the application of state law to suppress evidence gathered by federal agents in conformance with federal law. ▪ When both a federal and state statute regulate the same subject matter in conflicting ways, the federal enactment will preempt the state statute if: (1) the federal statute clearly evinces a congressional intent to preempt state law; or (2) "The . . . conflict [between the two acts] is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together'", (*Kelly v. Washington ex rel. Foss Co.,* 302 U.S. 1, 10, 82 L. Ed. 3, 58 S. Ct. 87 (1937)), and the reviewing court can therefore infer a congressional purpose to preempt state law. *Head v. New Mexico Bd. of Examiners,* 374 U.S. 424, 430, 10 L. Ed. 2d 983, 83 S. Ct. 1759 (1963); *Markham Advertising Co. v. State,* 73 Wn.2d 405, 418–19, 439 P.2d 248 (1968). In cases where federal preemption is found, the federal law will supersede the state statute "'only to the extent necessary to protect the achievement of the aims of the [federal enactment].'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 127, 38 L. Ed. 2d 348, 94 S. Ct. 383 (1973).

The federal wiretap statute reflects three central congressional goals: to establish a standard of admissibility of wiretap evidence for federal court proceedings; to set a *nationwide* minimum standard for infringements upon citizens' privacy; and to allow states to create state statutory criteria that are more protective of citizens' privacy than the federal minimum standard. *See* 18 U.S.C. § 2516(2); Act of June 19, 1968, Pub. L. No. 90–351, § 801(b), 82 Stat. 211; S. Rep. No. 1097, 90th Cong., 2d Sess. (1968), 2 U.S.

Code Cong. & Ad. News 2112, 2153–57, 2187; *see also People v. Conklin*, 12 Cal. 3d 259, 266–73, 522 P.2d 1049, 1053–58, 114 Cal. Rptr. 241, 245–50 (1974), *appeal dismissed*, 419 U.S. 1064, 42 L. Ed. 2d 661, 95 S. Ct. 652 (1974); *Commonwealth v. Vitello*, 367 Mass. 224, 245–47, 327 N.E.2d 819, 832–34 (1975). In accordance with these congressional aims, it has been held the federal statute controls the admissibility of wiretap evidence in federal court even when the evidence was gathered by state peace officers (*see, e.g., United States v. Hall*, 543 F.2d 1229, 1234–35 (9th Cir. 1976), *cert. denied*, 429 U.S. 1075, 50 L. Ed. 2d 793, 97 S. Ct. 814 (1977); *but see United States v. Sotomayor*, 592 F.2d 1219, 1224–26 (2d Cir.), *cert. denied sub nom. Crespo v. United States*, 442 U.S. 919, 61 L. Ed. 2d 286, 99 S. Ct. 2842 (1979)) and that the federal law preempts any state statute which accords *less* protection to citizens' privacy than does the federal statute. *E.g., People v. Conklin, supra* at 273; *Commonwealth v. Vitello, supra* at 247.

■ Since Congress did not intend to preempt more protective state requirements (and, indeed, specifically intended to permit such laws), and since none of the provisions in the federal law conflicts with the application of more protective requirements in state criminal proceedings, the federal wiretap statute does not preempt the more rigorous Washington privacy act. *See, e.g., People v. Conklin, supra* at 266–73; *State v. Farha*, 218 Kan. 394, 400, 544 P.2d 341, 348 (1975); *Commonwealth v. Vitello, supra* at 245–47; *State v. Kolosseus*, 198 Neb. 404, 408–09, 253 N.W.2d 157, 160 (1977).

The State argues that even if the privacy act controls the admissibility of evidence in state courts in general, the federal law nevertheless preempts state requirements when the evidence which is to be used in state court was gathered by federal agents. However, this degree of preemption urged by the State is not necessary to protect any of the congressional goals underlying the statute. Even when state statutory criteria are applied to determine the admissibility of

federal agents' evidence in state court, the federal authorities can still use this evidence in federal court as Congress intended. Moreover, the application of state statutory criteria to all evidence proffered in state court is essential to give effect to the congressional purpose of permitting more rigorous state requirements. Since federal law supersedes state statutes "'only to the extent necessary to protect the achievement of the aims of the [federal enactment]'" (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 127, 38 L. Ed. 2d 348, 94 S. Ct. 383 (1973)), we conclude that the Washington privacy act is not preempted and fully applies to evidence proffered in state court, even when that evidence was gathered by federal peace officers.[1] *Accord, People v. Jones,* 30 Cal. App. 3d 852, 106 Cal. Rptr. 749, *appeal dismissed,* 414 U.S. 804, 38 L. Ed. 2d 40, 94 S. Ct. 163 (1973); *but see People v. Fidler,* 72 Ill. App. 3d 924, 391 N.E.2d 210 (1979) (determining, without addressing the preemption issue, that the state statute is inapplicable to federal agents' wiretap evidence).

The State claims finally, that the federal statute preempts the application of state statutory requirements of

---

[1]In *State v. Mayes,* 20 Wn. App. 184, 579 P.2d 999 (1978), *review denied,* 91 Wn.2d 1001 (1978), the court concluded that the state privacy act is not applicable to evidence gathered by the peace officers of another state within the boundaries of that state and in accordance with the laws of that state. The court in *Mayes* approved the use in Washington courts of wiretap evidence gathered by California state police in California even though such police conduct would violate the Washington privacy act. *Accord, Commonwealth v. Bennett,* 245 Pa. Super. Ct. 457, 369 A.2d 493 (1976) (wiretap evidence obtained in New Jersey in conformance with the requirements of that state could be admitted in Pennsylvania even though such police conduct would violate Pennsylvania law). We have not as yet addressed the validity of this doctrine. However, even assuming arguendo that the doctrine is valid, it is not applicable to seizure of evidence by federal agents within the state in which the evidence is to be used. The basis of the doctrine adopted in *Mayes* and *Bennett* is that a state legislature's enactment of a privacy statute creates a privacy expectation only for individuals who are within the borders of that state. *See Mayes, supra* at 193; *Bennett, supra* at 494–95. When a federal agent gathers evidence within the borders of the state in which the evidence is to be used in a state prosecution, the individual who is the target of the search has a specific expectation of privacy under the statute of the state in which he is prosecuted.

admissibility to evidence gathered by federal agents because the other two privacy act remedies for illegal interception and recording—criminal prosecution (RCW 9.73-.080) and civil actions for damages (RCW 9.73.060)—cannot be applied to a federal agent who has acted in the course of his duties and in conformance to federal law. However, even assuming arguendo that these additional remedies are not applicable to a federal agent who has acted within the scope of his duties and in conformance with federal law (see *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977); *Scherer v. Morrow*, 401 F.2d 204 (7th Cir. 1968), *cert. denied*, 393 U.S. 1084, 21 L. Ed. 2d 777, 89 S. Ct. 868 (1969)), this conclusion does not mean the statutory remedy of excluding illegally seized evidence is also preempted with respect to evidence gathered by federal agents. The preemption of the criminal prosecution and civil liability remedies can arguably be seen as necessary to protect the congressional purpose of enabling federal agents to gather evidence in accordance with federal law for use in federal court. As previously discussed, neither this congressional purpose nor the other purposes underlying the statute require preemption of the statutory provision precluding the use in state court of evidence which has been seized in violation of state requirements.

Since the Washington privacy act applies to the evidence gathered in this case and since the federal agents failed to comply with the state statutory requirement of obtaining judicial approval prior to intercepting or recording private telephone communications or private conversations with the consent of only one of the parties to the conversation (RCW 9.73.030), the tape recordings are inadmissible in these state court proceedings. RCW 9.73.050.

## II
### ADMISSIBILITY OF PARTICIPANT TESTIMONY

The State contends that even if the recordings are inadmissible, the federal agents and citizen informant who participated in the conversations with defendants Williams

and Caliguri should nevertheless be permitted to testify as to their recollections of the content of the conversations.

The question of admissibility of testimony by a police officer or informant who has illegally recorded a conversation without the knowledge or consent of the other party is unique to a statute like the state privacy act, since the federal wiretap statute simply does not regulate a conversation that was recorded with the consent of one of the participants (*see* 18 U.S.C. § 2511(2)(c)), and it has been held that the fourth amendment to the United States Constitution does not afford any protection to an individual who willingly engages in conversation with another, even when the other party records the conversation or broadcasts the conversation to hidden listeners. *See, e.g., United States v. Craig*, 573 F.2d 455, 474 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 58 L. Ed. 2d 110, 99 S. Ct. 82 (1978); *United States v. Santillo*, 507 F.2d 629 (3d Cir.), *cert. denied*, 421 U.S. 968, 44 L. Ed. 2d 457, 95 S. Ct. 1960 (1975); *see also United States v. White*, 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971) (plurality opinion); *Lopez v. United States*, 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381 (1963) (based in part on Fourth Amendment concepts rejected in *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967)); *but see State v. Glass*, 583 P.2d 872 (Alaska 1978) (state constitution provides greater protection than Fourth Amendment and requires consent of both parties or warrant). Unlike the federal statute and the Fourth Amendment, the state privacy act does protect an individual whose conversation is recorded without his or her knowledge or consent. It is necessary, therefore, to determine whether this statutory guaranty requires the exclusion of the testimony of a conversation participant who engaged in an illegal recording as well as the recording itself.

■ The privacy act provides that "[a]ny *information* obtained in violation [of the act] . . . shall be inadmissible in any civil or criminal case . . . ." RCW 9.73.050. Thus, as

we have explained,

> the language and the history of RCW 9.73 make it clear the legislature's primary purpose in enacting these statutes was the protection of the privacy of individuals from public dissemination, even in the course of a public trial, of illegally obtained information.

*State v. Wanrow,* 88 Wn.2d 221, 233, 559 P.2d 548 (1977).

■ In *State v. Grant,* 9 Wn. App. 260, 511 P.2d 1013, *review denied,* 83 Wn.2d 1003 (1973), *cert. denied,* 419 U.S. 849, 42 L. Ed. 2d 78, 95 S. Ct. 87 (1974), the court concluded the privacy act does not bar the testimony of a police officer who participated in an illegally recorded conversation, without any involvement in or awareness of the unlawful monitoring and recording of the conversation. As the court explained, the information was legally obtained by the testifying officer even though it was illegally obtained by the monitoring officers. *Grant,* at 267. The court carefully explained that "[h]ad [the officer] been a party to the illegal recording and taping, a different question would be presented." *Grant,* at 267.

Unlike the situation in *Grant,* the federal agents and informant who participated in the conversations in the present case knew of, and took part in the illegal recordings of the conversations, and therefore obtained the information from the conversations in an unlawful manner. *See* RCW 9.73.030. Since the "legislature's primary purpose . . . was the protection of the privacy of individuals from *public dissemination,* even in the course of a public trial, of illegally obtained information" (italics ours) (*Wanrow,* at 233), the privacy act precludes the dissemination of this illegally obtained information—whether it is disseminated by introducing the tape recordings or the testimony of the officer or civilian informant who participated in the conversation. Accordingly, the federal agents and informant cannot testify as to the contents of the illegally recorded conversations.

### III
### STANDING TO CHALLENGE RECORDINGS OF
### CODEFENDANT'S CONVERSATIONS

In both the Williams and Caliguri cases, the State proposes to introduce recordings and police participant testimony concerning conversations with the defendant's alleged coconspirator in which the defendant himself did not participate. The defendant in each case moved to suppress the illegal recording and testimony concerning the conversation with his codefendant. The State asserts that a defendant does not have standing to object to the legality of the recording of a codefendant's conversation in which he did not participate, even when that recording is to be used against him.

The United States Supreme Court has held that a defendant can raise a Fourth Amendment challenge to the legality of electronic surveillance of a conversation only if the defendant himself participated in the monitored conversation or if the conversation took place on the defendant's premises. *Alderman v. United States,* 394 U.S. 165, 174–76, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969). The "'rights assured by the Fourth Amendment are personal rights [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.'" *Rakas v. Illinois,* 439 U.S. 128, 135 n.4, 138, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978); *Alderman,* at 174. However, the United States Supreme Court has also recognized that "[o]f course, Congress or state legislatures may extend the exclusionary rule and provide that illegally seized evidence is inadmissible against anyone for any purpose." *Alderman,* at 175.

In enacting the federal wiretap statute, Congress did not expand the Fourth Amendment "standing" rights of criminal defendants. *Alderman,* at 175 n.9; *United States v. Wright,* 524 F.2d 1100, 1102 (2d Cir. 1975); *United States v. Armocida,* 515 F.2d 29, 35 n.1 (3d Cir.), *cert. denied sub nom. Gazal v. United States,* 423 U.S. 858, 46 L. Ed. 2d 84, 96 S. Ct. 111 (1975). The wording of the federal law

expressly limits the statutory right to challenge a wiretap to an "'aggrieved person' . . . a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed." 18 U.S.C. §§ 2510(11); 2518(10)(a); *Alderman,* at 175 n.9. Moreover, the legislative history of the federal wiretap statute reveals that Congress expressly rejected a proposed amendment that would have granted standing to any defendant against whom an intercepted communication was to be introduced in evidence. *See* 114 Cong. Rec. 12508 (1968).

Where the standing provision of a state's wiretap statute is directly modeled after the federal statute, the courts have concluded that their respective state legislatures intended to follow the federal approach of limiting standing to participants in the intercepted communication and the intended targets of the interception. *See, e.g., State v. Barber,* 169 N.J. Super. 26, 404 A.2d 46 (1979); *People v. Edelstein,* 98 Misc. 2d 1018, 415 N.Y.S.2d 366 (1979). The Washington privacy act standing provision does not resemble the federal provision, and therefore it is necessary to examine the wording and legislative history of the state statute to determine whether the legislature intended to confer standing upon parties other than the participants in the conversation.

■ The privacy act provides that:

Any information obtained in violation [of the act] . . . shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73.080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.

RCW 9.73.050. Thus, the statute precludes the use of illegally obtained information "in any civil or criminal case"— whether it is the criminal prosecution of the participant in the conversation, or the prosecution of his codefendant. The statutory language and legislative history reveal that

"the legislature's primary purpose . . . was the protection of the privacy of individuals from public dissemination, even in the course of a public trial, of illegally obtained information." *State v. Wanrow, supra* at 233. This legislative goal is frustrated by the dissemination of the illegally obtained information in either the public trial of the conversation participant or the trial of his codefendant. Accordingly, we must conclude on the basis of the language and history of RCW 9.73, the legislature intended to allow a defendant to object to the use in his criminal trial of evidence obtained in violation of the statute, even though the defendant himself was not a participant in the unlawfully intercepted or recorded conversation. Therefore, defendants Williams and Caliguri have standing to object to the use in their trials of the recordings and police participant testimony concerning the conversations intercepted and recorded in violation of RCW 9.73.030.

## IV
### RECORDINGS OF THREATS OF EXTORTION, BLACKMAIL OR BODILY HARM

██ Although suppressing the recordings and police participant testimony concerning the unlawfully intercepted and recorded conversations of Williams and his codefendant, the trial court in the Williams case specified that its suppression order did not cover the recordings or police participant testimony concerning any parts of the conversations that related to "threats of extortion, blackmail, bodily harm, or other unlawful requests or demands". The trial court based this portion of its order on RCW 9.73.030(2), which provides that:

Notwithstanding the provisions of subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, crime, or other disaster, or (b) *which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands,* or (c) which occur anonymously or repeatedly or at an extremely inconvenient hour, whether

or not conversation ensues, may be recorded with the consent of one party to the conversation.

(Italics ours.) This provision establishes specific exceptions to the statutory prohibition against interception or recording of a communication or conversation with the consent of only one party and without prior judicial approval. *State v. Bonilla,* 23 Wn. App. 869, 874, 598 P.2d 783 (1979).

Defendant Williams contends the trial court erred in applying subsection (2)(b) to the present case. Defendant argues that subsection (2)(b) applies only to emergency situations and is not applicable to cases such as the present case, where police officers conducted preplanned interceptions and recordings of conversations. Invoking the rule requiring statutory provisions to be considered in pari materia with related provisions, defendant argues that parts (a) and (c) of subsection (2) concern emergency situations, and thus indicate a legislative intent to enact this entire set of exemptions specifically for emergency situations. Defendant furthermore draws on the legislative history of this provision which indicates that the set of exemptions in subsection (2) was added to the act in 1977 in the aftermath of our decision in *State v. Wanrow, supra.* Since subsection (2)(a) concerns the type of emergency situation involved in *Wanrow* (*see State v. Bonilla, supra* at 874), defendant asserts the legislature likewise intended to restrict (2)(b) to emergency situations.

The invoked rules of statutory construction do not support the interpretation advanced by defendant. The purpose of reading statutory provisions in pari materia with related provisions is to determine the legislative intent underlying the entire statutory scheme and read the provisions "as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes." *State v. Wright,* 84 Wn.2d 645, 650, 529 P.2d 453 (1974). RCW 9.73.030(2) evidences a legislative intention to establish specific exceptions to the general privacy act prohibition against interceptions and recordings with the consent of

only one party. There is no indication in either the language or history of subsection (2) that the legislature intended to establish all of the exceptions for solely emergency situations. The mere fact that two of the exceptions apply to emergency situations does not enable us to conclude that the legislature also intended to restrict the third exception to emergency situations. Similarly, the legislative history showing the legislature intended to restrict subsection (2)(a) to emergency situations does not allow us to infer that the same intention underlies the very different requirements of subsection (2)(b).

Defendant Williams furthermore contends that subsection (2)(b) must be limited to emergency situations to avoid undermining the entire privacy act. He points out that the provision exempts from the act "wire communications or conversations . . . which convey threats of extortion, blackmail, bodily harm, *or other unlawful requests or demands*," (italics ours) (RCW 9.73.030(2)), and argues that an overbroad interpretation of the "catchall" phrase could negate the privacy act protections whenever a conversation relates in any way to unlawful matters. The defendant is certainly correct in asserting that such an overbroad construction of the catchall provision would be inconsistent with the legislative intent underlying the entire privacy act. The legislature intended to establish protections for individuals' privacy and to require suppression of recordings of even conversations relating to unlawful matters if the recordings were obtained in violation of the statutory requirements. RCW 9.73.030, 9.73.050. The exception contained in RCW 9.73.030(2)(b) must be strictly construed to give effect to this legislative intention underlying the general statute. *State v. Wright, supra* at 652; *Hall v. Corporation of Catholic Archbishop*, 80 Wn.2d 797, 801, 498 P.2d 844 (1972). Thus, RCW 9.73.030(2)(b) must be interpreted as exempting from the act only communications or conversations "which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands," *of a similar nature.*

However, in the absence of some indication in the language or history of RCW 9.73.030(2)(b), we cannot infer that the legislature intended to further restrict the exception to emergency situations. The language of the provision applies equally to emergency and nonemergency situations and the rules of statutory construction do not suggest a contrary interpretation.

The trial court in the Williams case properly suppressed the recordings and testimony concerning the conversations with Williams and his alleged coconspirator, and correctly ruled admissible those parts of the conversations relating to threats of extortion, blackmail, bodily harm or other unlawful requests of a similar nature. The trial court in the Caliguri case properly suppressed the recordings of the conversations in which the defendant participated, but erred in failing to suppress police participant testimony concerning these conversations, and recordings and police participant testimony concerning conversations with Caliguri's alleged coconspirator.

The order in the Williams case is affirmed in its entirety, and the order in the Caliguri case is affirmed in part and reversed in part.

ROSELLINI, WRIGHT, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.

DOLLIVER, J. (dissenting)—In its case against the defendants, the State made the serendipitous discovery that certain conversations between the defendants and a federal undercover agent had been recorded by federal agents. It is conceded that the recording was made in accordance with federal law. 18 U.S.C. § 2511(2)(c) (1976). The majority, however, holds the state privacy act (RCW 9.73) applicable and that the recordings must be suppressed. I disagree.

The state act applies to matters intercepted or recorded by "any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions". RCW 9.73.030(1). Even though neither the United

States government nor its agents are mentioned in the statutory list, the majority concludes that the legislature intended the statute to apply to them. To reach this result, the majority says at pages 537–38:

> This principle [expressio unius est exclusio alterius], however, is not applicable in the present case because federal agents are, in fact, included within one of the general classes listed in the statute. The privacy act provides that it is applicable to "any individual." RCW 9.73.030(1). Interpreting this phrase, as we must, in accordance with its ordinary meaning (*see In re Lehman*, 93 Wn.2d 25, 27, 604 P.2d 948 (1980)), we conclude the legislature intended the statute to apply to all individuals, including federal agents.
>
> Moreover, as we have repeatedly cautioned, the maxim of express mention and implicit exclusion "'is to be used only as a means of ascertaining the legislative intent where it is doubtful, and not as a means of defeating the apparent intent of the legislature.'" *DeGrief v. Seattle*, 50 Wn.2d 1, 12, 297 P.2d 940 (1956); *State ex rel. Becker v. Wiley*, 16 Wn.2d 340, 350–51, 133 P.2d 507 (1943); *State ex rel. Spokane United Rys. v. Department of Pub. Serv.*, 191 Wash. 595, 598, 71 P.2d 661 (1937). The legislature's employment of the term "any individual" evinces an intention to render the statutory requirements broadly applicable to all individuals who might conceivably record a conversation. The maxim of express mention and implicit exclusion cannot be rigidly applied to exclude federal agents and thereby defeat the intent of the legislature.

The majority claims too much and strips any vitality from the listing made in the statute. Since persons rather than abstract entities must in fact record or intercept any communication, under the analysis of the majority only the word "individual" would be needed in RCW 9.73.030(1). The inclusion of the other categories indicates the legislature obviously had something else in mind. We must give effect to all the language of the statute. *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977). Nothing indicates the "apparent intent" of the legislature was to use the term "individual" as a catchall. Rather, it is reasonable to infer

legislative intent was to cover persons acting as individuals, members of a partnership, agents of a corporation, or associations, or in the employ of the State of Washington, its agencies or political subdivisions. The federal government is not included in this list.

To determine legislative intent is difficult at best; but I believe here there is no question of what the legislative intent was not. By no process of reasoning or logic, given the list of RCW 9.73.030(1), can it be shown that "individual" refers to agents of the federal government or that it was so intended to refer. The majority seems to recognize this and does not try to persuade—it simply concludes.

For reasons known to itself, the legislature plainly and unambiguously did not include recordings or interceptions by the federal government or its agents within the ban of the privacy statute. The wisdom of this action is not for the courts to determine. *State v. Wanrow, supra* at 232. Indeed, it could be argued that, since the legislature was aware of the statute allowing valid federal wiretaps to be used in state courts (18 U.S.C. § 2517(3) (1976)), it deliberately left out any provision as to federal officers. The decision by the legislature should be honored; the recordings should be admitted. *See Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976).

I dissent.

STAFFORD and BRACHTENBACH, JJ., concur with DOLLIVER, J.

Reconsideration denied November 18, 1980.