217 N.J. Super. 95 (1987)
524 A.2d 1303
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PRIMO V. MOLLICA AND AUGUSTINE FERRONE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1987.
Decided April 24, 1987.
*96 Before Judges ANTELL, BRODY and D'ANNUNZIO.
Larry R. Etzweiler, Deputy Attorney General, argued the cause for appellant (W. Cary Edwards, Attorney General, attorney; Larry R. Etzweiler on the brief).
Dennis O'Connor argued the cause for respondent Primo V. Mollica (Dennis O'Connor, attorney).
Francis J. Hartman argued the cause for respondent Augustine Ferrone (Francis J. Hartman, attorney; Charles H. Nugent, Jr. on the brief).
The opinion of the court was delivered by, ANTELL, P.J.A.D.
In State v. Hunt, 91 N.J. 338 (1982), it was decided that telephone toll billing records are subject to suppression for use as evidence under Article I, par. 7 of the New Jersey Constitution when seized by the police in a warrantless search. The question presented on this appeal by the State is whether such toll records may be relied on as proof of probable cause for a search warrant where the records were acquired by a federal agent and turned over to a state police officer who signed the supporting affidavit for the warrant. The trial judge found that the records had been acquired from the hotel in which defendant had been temporarily residing by the federal agent as part of an independent federal investigation and then given to the state officer without collusion or prearrangement.[1] *97 Nevertheless, he concluded that the records were the product of a search and seizure which violated the New Jersey constitutional prohibition against an illegal search and seizure. He concluded further that the warrant issued thereon was invalid and ordered suppression of the evidence seized pursuant thereto. State v. Mollica, 214 N.J. Super. 658 (Law Div. 1986). We agree and affirm.
Because the seizure was lawful under the Fourth Amendment to the Constitution of the United States, Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); State v. Hunt, supra, 91 N.J. at 343-344, the State argues that the toll records were properly relied on as proof of probable cause for the warrant and that the order under review constitutes an improper state court interference with the conduct of federal investigations.
The State's argument presupposes that the Fourth Amendment confers a license upon federal investigators to which state courts are obliged to defer in determining whether the exclusionary rule is applicable to a given case under a state constitution. But we do not understand that the separate state and federal constitutional provisions serve so much to differentiate the powers of officers representing the respective jurisdictions. In our view they determine privacy standards which control the admissibility of evidence seized pursuant to a search, regardless of which jurisdiction's police action has been drawn into question.
The courts of this state have "frequently resorted to our own State Constitution in order to afford our citizens broader protection of certain personal rights than that afforded by analogous or identical provisions of the federal Constitution." State v. Novembrino, 105 N.J. 95, 145 (1987). To protect fully the individual's right to privacy, the exclusionary rule
... has become an integral element of our state-constitutional guarantee that search warrants will not issue without probable cause. Its function is not merely to deter police misconduct. The rule also serves as the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches. [Id. at 157; emphasis supplied].
*98 In State v. Hunt, supra, the Supreme Court decided that individuals enjoy a protectible privacy interest in telephone toll billing records and that court-mandated standards under the New Jersey Constitution require that the records be suppressed from use as evidence unless obtained pursuant to a search warrant. 91 N.J. at 347. See also State v. Novembrino, supra, 105 N.J. at 145. We cannot logically discern how a privacy violation is any the less iniquitous because performed under federal, rather than state, police authority, and we see no justification for applying one standard for admissibility where the seizure is by a federal investigator and a different standard where it is done by a state investigator. In either case the result is the same  an unsanctioned privacy violation.
It may be, as the State argues, that because the Fourth Amendment permits such evidence in federal proceedings the deterrent impact upon federal police of exclusion in state court proceedings will be negligible. Nevertheless, the effect of our withholding the remedy of exclusion is to reward and, even though in a small way, encourage conduct which our Supreme Court has found repugnant to the organic law of New Jersey. While it lies beyond our power to regulate the admissibility of evidence in federal courts, our obligation remains in areas under our authority to preserve intact this shelter against governmental intrusions. That the Fourth Amendment allows the use of toll records as evidence in federal courts is a sufficient response to the State's claim that the ruling under review improperly attempts to regulate the conduct of federal investigations.
The State analogizes this case to the facts of People v. Blair, 25 Cal.3d 640, 159 Cal. Rptr. 818, 602 P.2d 738 (Cal. 1979), and urges that its reasoning should persuade us to reverse the decision below. In that case toll records legally seized by federal agents in Pennsylvania were held admissible in a California court proceeding, even though the seizure would have been held illegal if it had occurred in the State of California. We disagree that this decision supports the result contended for *99 by the State. Indeed, it clearly suggests that had the seizure taken place in California the result would have been different. As the court said at 159 Cal. Rptr. 828, 602 P.2d 748:
Defendant was a resident of the jurisdiction in which the seizure occurred. Since the search was legal there, his expectation of privacy was not impaired under the laws of the state in which he resided. Unlike the situation that arises when a seizure contrary to California law occurs in this state, the venture is not lawless, and the government is therefore not profiting from illegal conduct or acting as a law-breaker.
Thus, the Supreme Court of California elected not to sit in judgment upon the standards of privacy protection observed by a sister state. But here the seizure violated privacy standards prevailing within the jurisdiction of the forum state.
Closely analogous to this case is State v. Williams, 94 Wash.2d 531, 617 P.2d 1012 (Wash. 1980), where tape recordings made by federal agents in accordance with the federal wiretap statute, but in violation of the Washington State Privacy Act, were held inadmissible in a state court prosecution. In language clearly appropriate herein, the court observed that "[w]hen a federal agent gathers evidence within the borders of the state in which the evidence is to be used in a state prosecution, the individual who is the target of the search has a specific expectation of privacy under the statute of the state in which he is prosecuted." 617 P.2d at 1018 n. 1.
We have not overlooked that State v. Williams, supra, was later distinguished by the Washington Supreme Court in State v. O'Neill, 103 Wash.2d 853, 700 P.2d 711 (1985). It was there held that the kind of tape recording excluded as trial evidence in Williams could nevertheless be used by state officers "for the purpose of establishing probable cause to obtain the issuance of an order from a state court authorizing electronic eavesdropping in accordance with state statutes." 700 P.2d at 719. The apparent departure from Williams was based on the court's belief that Williams had held the evidence merely inadmissible, not actually illegal, and that this distinction was enough to authorize its use to establish probable cause. The court explained that although in Williams there had been a *100 "passing mention of `illegality' of the federally obtained tapes," the term "illegality" was used in the sense of "inadmissibility." Id. at 720. "Such evidence was held inadmissible in Williams, but it was not illegal. There is a difference." Ibid.
The distinction between illegality and inadmissibility need not detain us here. In this case the toll records were taken in violation of a state constitutional provision and cannot be regarded as anything other than illegal evidence, and therefore subject to suppression. Professor LaFave adds substance to this conclusion in the following way:
When (as is occurring with greater frequency) a state court finds that a certain arrest or search passes muster under the Fourth Amendment but that it violates the comparable provision of the state constitution, there does not appear to be any dissent from the conclusion that the fruits thereof must be suppressed from evidence. The rationale for such a result is seldom stated in the cases, but exclusion in these circumstances may be explained on the ground that a violation of the fundamental law of the state constitutes such a substantial intrusion upon the defendant's rights that the exclusionary remedy is just as appropriate as when the Fourth Amendment is violated. That state courts do not even pause to consider the matter in these circumstances is perhaps not too surprising, for in those relatively rare situations in which a court interprets the state equivalent of the Fourth Amendment to forbid some practice the Supreme Court has not deemed a violation of the Fourth, it is clear the court views the practice as constituting a very serious intrusion. [1 LaFave, Search and Seizure, § 1.5(b) at 101-102 (2d Ed. 1987); footnotes omitted].
Finally, the practice we are asked by the State to sanction has already been found unacceptable by the United States Supreme Court. In Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), decided before Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), mandated application of the exclusionary rule in state court proceedings, it was held that evidence seized by state police officers without federal participation in violation of Fourth Amendment standards, but not in violation of state law, could not be received in a federal court prosecution. That this constituted a rejection of the "so called `silver platter' doctrine" was recently noted in State v. Novembrino, supra, 105 N.J. at 136.
*101 The facts of Elkins are materially identical to those before us. Whereas there the federal court refused to permit the use of evidence lawfully seized by state police under state law, here a state court refuses to permit the use of evidence lawfully seized by federal police under federal law.
Affirmed.
NOTES
[1] In a previous appeal herein we decided in an unpublished opinion that the principle of State v. Hunt was equally applicable to hotel rooms as to homes and offices.