IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31422-7-III |
| Respondent, | ) | Consolidated with |
| | ) | Nos. 31423-5-III; 31424-3-III; |
| v. | ) | 31425-1-III |
| | ) | |
| BRYER DUSTIN LOEW, a Juvenile, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The trial court convicted juvenile Bryer Loew of two counts of

burglary in the second degree, six counts of theft of a motor vehicle, two counts of theft

of a firearm, and two counts of juvenile in possession of a firearm. Before trial, Loew

sought to suppress a victim's daughter's surreptitious recording of a conversation with an

alleged accomplice. After the trial court ruled that Loew lacked standing under RCW

9.73.030 to suppress the conversation as evidence, Loew stipulated the State possessed

sufficient evidence to convict him of the charged crimes, but reserved the right to appeal

the court's denial of his motion. On appeal, the State concedes Bryer Loew had standing

under RCW 9.73.030 to challenge the recorded conversation. The question on review is

whether, based on this concession, the charges against Bryer Loew should be dismissed

or the cases remanded for trial.

## FACTS

Someone planned the Halloween party of the century.

On October 16, 2012, Colville resident Richard Nichols discovered as missing and reported to law enforcement as missing a Case 580E backhoe. On the morning of October 22, Colville resident Casey Lynds discovered his red 1997 Isuzu Rodeo, with two firearms therein, missing. On that same morning, the owner of Colville Valley Concrete, Steve Connelly, found a company large front end loader and large off road articulating Volvo dump truck missing from the company's wash plant. Both Connelly and Lynds reported their respective vehicles stolen to the Stevens County Sheriff's Office.

On the morning of October 22, Stevens County Sheriff Deputies Mike Swim and Jim Burr responded to the reports of stolen vehicles by journeying to Colville Valley Concrete. From large tracks, they observed that two pieces of heavy machinery were driven from the property and traveled east on State Highway 20. The deputies followed the tracks that turned onto Knapp Road. Next the two law enforcement officers pursued the tracks as they ran through a gate at the former Colville city landfill. They continued along the vehicle tracks east on Old Dominion Road to the end of the county road and on to a forest service road. At the site of the Old Dominion Mine, the deputies observed a severely damaged red Isuzu Rodeo. Deputy Mike Swim viewed the vehicle for injured

2

occupants but the vehicle was unoccupied. Mike Swim provided the license plate to dispatch, which identified the car as the one stolen from Casey Lynds. Upon initial inspection, Deputy Swim saw no firearms in the vehicle.

Stevens County Sheriff Deputies Mike Swim and Jim Burr continued on the forest service road following the large equipment tracks until three miles beyond the mine, and then turned south onto an overgrown spur road. On the forest service road, Deputy Swim located an insulated coffee mug and an unopened letter with Casey Lynds' name and address on the outside. About 200 yards onto the spur road, the deputies encountered a deep ditch. They believed that someone dug the ditch to prevent further passage. Deputy Swim exited his patrol car and walked 200 feet, before he located the Caterpillar front end loader and the Volvo dump truck on an old logging landing. Deputy Swim also discovered the Case 580E backhoe concealed in trees.

Deputy Swim found a large fire extinguisher on the ground next to the backhoe. The extinguisher came from the storage shed at the Stevens County Public Works gravel pit at Aladdin Road and Knapp Road. Later, the Public Works Department reported damage to the metal shed.

Deputy Swim checked both the equipment for evidence of fingerprints and footprints. Deputy Swim located one shoe or boot print on the Caterpillar loader. Inside the Volvo dump truck, Deputy Swim found an air horn later identified as belonging to the control trailer at the Colville Valley Concrete wash plant site. Someone had removed the

3

truck's ignition and cut its wires to start the truck. The dump truck had been driven the entire trek, with the parking brake engaged, such that the brake was ruined.

The Caterpillar loader suffered broken glass on both doors. The ignition was not removed but was damaged as if a screwdriver was used to start the machine.

Deputy Swim returned to the Colville Valley Concrete wash plant. He located two sets of foot prints that entered the property from the southwest. One print was from a tennis shoe and the other a boot print. Neither set of prints came from a Vibram sole and company employees wore only Vibram shoes. Deputy Swim saw both sets of prints surrounding the parking spots for the equipment.

Colville Valley Concrete discovered that culprits removed the ignition from a third machine, an older Moxy articulating dump truck. Culprits also rammed the locked gate to the wash plant property with one of the machines. They broke into the control trailer and took a first aid kit, in addition to the air horn.

On October 22, Deputy Swim received a phone call from amateur gumshoe, K.L., the daughter of Casey Lynds. K.L. explained that, after learning of the theft of her father's car and of equipment from Colville Valley Concrete, she immediately guessed the identity of the thieves. She told Deputy Swim that D.C. spent time on her family's property as a family friend and knew the location of the spare key for the Isuzu Rodeo. K.L. added that D.C. planned a large Halloween party in the woods in the Dominion

4

Mountain area. She said D.C. recently left Martin Hall where he served time for stealing a vehicle.

On October 24, K.L. and a friend, C.T., spoke with D.C. about the thefts to determine if he would confess. C.T. recorded the conversation on her phone, during which conversation D.C. admitted to stealing Lynds' vehicle and taking the heavy equipment for use to clear an area in the woods for the party. D.C. stated that his friend, Bryer Loew, assisted with the thefts. Loew's father is a heavy equipment operator. C.T. allowed Stevens County Sheriff Detectives Mike George and Dwayne Ford to listen to and transfer the recording.

On October 24, after listening to the recording of D.C., Detectives George and Ford traveled on Old Dominion Road to continue with the investigation of the Colville thefts. The two observed a silver 1989 Ford truck, with a license plate registered to Bryer Loew. Due to D.C.'s implication of Loew on the recording, the detectives followed and stopped Loew's vehicle.

Detective Ford spoke with Bryer Loew through the Ford truck's driver's side window. Fortuitously present in the truck was D.C. Detective Ford asked Loew to exit the vehicle and Loew complied. Ford explained that he was conducting an investigation involving recent thefts of heavy equipment and other property. As Detective Ford spoke with Loew, Detective George spoke to D.C. The two later switched interrogatees.

Detective Ford advised D.C. of his *Miranda*[1] rights and presented D.C. the additional underage warnings. Detective George gave Bryer Loew the same warnings. Both agreed to speak. Both D.C. and Loew admitted to stealing the Case backhoe, Volvo dump truck, Caterpillar loader, Isuzu Rodeo, firearms, and even some ATVs and a snowmobile trailer. Loew and D.C. consented to an audio and video recorded statement wherein they described the thefts. Both young men implicated S.L. in assisting with the thefts. D.C. agreed to return the stolen firearms, which he hid in his mother's home. The officers arrested D.C. and Bryer Loew after retrieving the firearms.

## PROCEDURE

In four separate cases, the State charged Bryer Loew with two counts of second degree burglary, six counts of theft of a motor vehicle, two counts of theft of a firearm, and two counts of juvenile in possession of a firearm. In all cases, Loew moved to suppress the recorded conversation between J.L, C.T., and D.C., which recording implicated Loew in the crimes. Loew argued that the court should also suppress the interviews and confessions given Detective Ford and Detective Mike George, since their statements resulted from the unlawfully recorded conversation. The court denied the motions, reasoning Loew lacked standing to contest the recording, since he was not a party to the conversation.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed 2d 694 (1966).

Bryer Loew stipulated that the recording and his subsequent statements were sufficient to find him guilty of all charges, but reserved the right to appeal the order denying his motion to suppress. The trial court sentenced him to one year of community supervision, in addition to 96 days he already served.

## LAW AND ANALYSIS

Washington law prohibits the recording of any private conversation by any electronic device without first obtaining the consent of all persons engaged in the conversation. RCW 9.73.030 reads:

> (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual . . . or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
>
> . . . .
>
> (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.
>
> . . . .
>
> (3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: PROVIDED, That if the conversation is to be recorded that said announcement shall also be recorded.

Washington renders information obtained in violation of RCW 9.73.050 inadmissible in any civil or criminal case in all courts. RCW 9.73.050 provides:

> Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been

7

> violated in an action brought for damages under the provisions of RCW
> 9.73.030 through 9.73.080, or in a criminal action in which the defendant is
> charged with a crime, the commission of which would jeopardize national
> security.

The trial court, at the insistence of the State, ruled that Bryer Loew lacked standing to suppress the recording because he was not a party to it. The State now concedes it was wrong. The Evergreen State's Supreme Court rejected this position in *State v. Williams*, 94 Wn.2d 531, 617 P.2d 1012 (1980):

> [W]e must conclude on the basis of the language and history of RCW 9.73,
> the legislature intended to allow a defendant to object to the use in his
> criminal trial of evidence obtained in violation of the statute, *even though
> the defendant himself was not a participant in the unlawfully intercepted or
> recorded conversation.*

*Williams*, 94 Wn.2d at 546 (emphasis added).

Bryer Loew asks this court to reverse his conviction and dismiss the charges against him because of the trial court error. He cites no authority that compels dismissal of the prosecution. We decline and instead remand for further proceedings, during which the trial court should address the merits of whether the recording should be suppressed, and, if so, what other evidence must be excluded.

While Bryer Loew omits any citation to authority supporting his request, he may rely on the Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy." U.S. CONST. amend.

8

V. This prohibition for successive punishments bars the State from retrying a defendant whose conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict. *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). "*Burks* was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as the 'incorrect receipt or rejection of evidence.'" *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988) (quoting *Burks*, 437 U.S. at 14-16)). The Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him. *Lockhart*, 488 U.S. at 40; *State v. Jasper*, 174 Wn.2d 96, 120, 271 P.3d 876 (2012).

RCW 9.73.030 criminalizes and excludes from court "private" conversations recorded without permission. The State argues that the recorded conversation of D.C. was "public" in nature. On remand, the trial court should consider the factors outlined in *State v. Clark*, 129 Wn.2d 211, 225-27, 916 P.2d 384 (1996) in determining whether the subject recording is public or private.

The State also urges that Detective George's and Detective Ford's stopping and speaking to Bryer Loew and D.C. were justified under the independent source doctrine. Assuming the trial court suppresses the recorded conversation, the court should also

No. 31422-7-III consol. w/31423-5-III; 31424-3-III; 31425-1-III
*State v. Loew*

address whether the detectives held sufficient cause to contact and stop Bryer Loew on the basis of other information.

## CONCLUSION

We reverse the trial court's ruling that Bryer Loew lacks standing to assert the protections of RCW 9.73.030. We remand the case for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.